**Robert W. HUFFORD and Patricia G. Hufford, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 2571.

United States District Court
E. D. Washington, N. D.

Nov. 29, 1965.

Findings of Facts and Conclusions of Law March 23, 1966.

Witherspoon, Kelly, Davenport & Toole, by Ned M. Bares, Spokane, Wash., for plaintiff.

Caroll D. Gray, Asst. U. S. Atty., Bruce A. Koppe, Atty., U. S. Dept. of Justice, for defendant.

POWELL, Chief Judge.

## MEMO DECISION ON RECONSIDERATION

The decision of the Court was filed May 28, 1965, holding that the transaction involved in this case was not entitled to capital gains treatment. A Motion for Reconsideration has been made. I have determined to grant the motion to reconsider and to set aside the original decision.

I am accepting, for the purposes of this opinion on reconsideration, the statements in the Government's trial brief (p. 3–4), which are as follows:

"The question of whether a particular transaction falls within the scope of a given taxpayer's trade or business * * * is a question of fact and is to be decided solely within the context of each case as it arises. Wineberg v. Commissioner, 326 F.2d 157, 160 (C.A. 9th). Both the Government and the taxpayer could cite numerous cases supporting their respective treatments

of the barley here in question, but we believe that to do so would serve no useful purpose. * * * In general, four factors have been applied by the courts in determining the character of particular assets. * * * These are:

(1) The purpose for which the asset was acquired; i. e., for sale or for investment.

(2) The number, continuity, and frequency of sales by the taxpayer.

(3) The activity of the seller in promoting the sale.

(4) The extent of the substance of the transactions."

Applying the four factors to the transaction herein involved I find that the transaction was of an isolated nature since I consider the sale of barley seed as being entirely different than the businesss ordinarily carried on by Mr. Hufford. It was not a transaction in which there was a purchase and sale of malting barley, which was his principal trade or business.

The transaction was unusual. The receipts amounted to only a small percentage of his total sales, the seed was specially treated for the purpose for which it was intended and there has been no recurrence of the transaction.

It has been held that a taxpayer in the business of buying and selling stocks could buy and hold stocks and receive capital gains treatment on them, that a taxpayer in the business of developing real estate subdivisions could hold real estate as a capital asset, and that dealers in commodities could do the same.

I find here the circumstances do justify Mr. Hufford in treating the Haisa II barley seed as a capital gain transaction.

The previous memorandum decision is vacated and the plaintiffs are directed to prepare and submit findings of fact, conclusions of law and judgment granting the prayer of their complaint.

In changing the earlier decision I have considered that each case must be governed by its peculiar facts and this determination is supported by a number of cases. It is my conclusion that the uniqueness and the nonrecurrence of the barley seed transaction, and the difference between it and his business of dealing in malting barley, take it outside the ordinary trade or busines of Mr. Hufford.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on regularly before the Court sitting without a jury at Spokane, Washington, on May 27, 1965, the plaintiffs being represented by their attorneys of record, Allan H. Toole and Ned M. Barnes, and the defendant being represented by Bruce A. Koppe, Tax Division, United States Department of Justice, Washington, D. C., and the Court having considered the facts as stipulated in the pretrial order, the evidence adduced at trial including the exhibits, and the briefs and arguments of the parties, and being fully advised in the premises, and the Court on May 28, 1965, having entered its memorandum decision herein, and the Court having reconsidered the same pursuant to plaintiff's motion, and having on November 29, 1965, entered its memorandum decision upon such reconsideration, does make the following:

### FINDINGS OF FACT

1. Plaintiffs are husband and wife and residents of this judicial district and division.

2. Plaintiffs filed their joint federal income tax return for the year 1958 with the District Director of Internal Revenue at Tacoma, Washington, and paid the tax shown as due thereon.

3. Subsequent to the filing of the 1958 return of plaintiffs, that return was audited by the Internal Revenue Service. On August 9, 1961, additional taxes in the amount of $18,577.82 plus interest of $2,425.96 were assessed.

4. The assessment was paid and on June 17, 1963, plaintiffs filed a claim for refund of tax for the year 1958 in the amount of $12,888.08. The claim was filed within two years of the date of pay-

ment of the assessment. The claim for refund was disallowed on January 16, 1964. This suit was filed on August 21, 1964.

5. Hufford and Hufford was at all times material to this action a sole proprietorship engaged in the business of purchasing and selling malting barley with a relatively small portion of its business being that of a commission broker in grass, clover and alfalfa seeds; these latter are known as "field seeds" and are distinguished from the "cereal" or "grain" seeds such as barley. In the ordinary course of his business Mr. Hufford, the owner of Hufford and Hufford, buys malting barley from various warehouses in the Pacific Northwest, taking title to the barley. He, in turn, sells the barley to maltsters and brewers for malting purposes. Except for the transaction which is subject of this suit, Mr. Hufford did not, and does not, sell cereal or grain seeds to farmers or anyone else for use as seed for planting.

6. In 1955 Mr. Hufford obtained from Europe a pound of Haisa II barley, a type of malting barley, which was planted in a crude test plot in Grangeville, Idaho. This barley was harvested and found to be yielding more barley per acre with the same quality as existing malting barleys being grown in the area, and with somewhat stronger physical characteristics than other barleys grown in the area. This variety had never been grown before in the United States.

7. Mr. Hufford's purpose in acquiring and planting the Haisa II barley was to ascertain whether a new variety of malting barley might be successfully established in the Pacific Northwest. He enlisted the cooperation of two warehouses, located in strategic growing areas, who stored the seed free of charge and otherwise freely cooperated with Mr. Hufford in this experiment. Experimental work of this sort is generally done by State Universities and Agricultural Experimental Stations and not by private persons; it is not the usual and ordinary business of a dealer in malting barley.

8. In 1956 additional Haisa II barley was imported by Mr. Hufford. The barley was given free of charge to warehouses for seed and the warehouses in turn gave it out to reliable farmers free of charge. The warehouses gave the farmers a guarantee that the barley would be purchased from them at malting barley prices, and Mr. Hufford guaranteed to pay the warehousemen the malting barley price. All farmers agreed to return the seed to Mr. Hufford, with his purchase being only of that portion of the crop in excess of the original seed. The warehouses cooperated with Mr. Hufford in the project, storing the seed free of charge. A few carloads of the 1956 crop were tested by maltsters and brewers and the rest kept for seed.

9. In 1957 the barley stored from the previous year was treated for smut (and thereafter suitable only for seed). The barley was then placed in the hands of farmers under the same arrangement as in 1956. Of the 1957 crop, five carloads were sold by Mr. Hufford to brewers for testing. The remainder was kept for seed. The proceeds of the sale to brewers in 1957 were reported as ordinary income by Mr. Hufford.

10. On April 5, 1958, one of the breweries testing Haisa II barley advised Mr. Hufford that Haisa II met the standards of malting barley and that it would purchase Haisa II if the quality were maintained.

11. Mr. Hufford then determined to sell the remaining Haisa II seed outright to farmers for seed within the 4-week planting season of 1958. Again, the seed was treated for smut, thereby rendering it unfit for use as malting barley. The seed was distributed to warehouses for the purpose of sale to farmers. The warehouses informed the farmers that the seed was available for purchase. Mr. Hufford employed no salesmen and initiated no promotional or advertising activities in connection with the distribution of the seed to farmers. He did not hold himself out as a dealer in Haisa II barley seed, nor did he take an active part in the sale and distribution of the seed.

12. The proceeds from the sale of Haisa II seed in 1958 were reported by taxpayers as income from the disposition of a capital asset, subject to tax at capital gain rates. Assessment of the amount in dispute in this case was based upon the treatment of the income from the sale of the Haisa II seed in 1958 as a transaction in the ordinary course of the taxpayer's trade or business.

13. The acquisition of the Haisa II barley seed, its test planting and processing for two years, and the ultimate disposition to farmers in 1958 was a transaction of an isolated nature, and was entirely different than the business ordinarily carried on by Mr. Hufford. It was not a transaction in which there was a purchase and sale of malting barley, which was the principal trade or business of Mr. Hufford.

14. The transaction was very unusual in that private individuals do not engage in the business of establishing and testing new varieties of grain. The receipts from the sale of the Haisa II barley in 1958 amounted to $92,718.71, only 3.3% of Mr. Hufford's gross sales volume. The seed was specially treated for smut, thereby rendering it unfit for use as malting barley; it was specially prepared for the purposes of seed and not retained by the taxpayer for sale as malting barley in the normal course of his business.

15. The taxpayers have never engaged in another transaction of this nature, either prior to or subsequent to the importation and sale of the malting barley.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties to this action.

2. The Haisa II barley seed sold by the plaintiffs in 1958 was not stock in trade of a kind which would properly be included in their inventory at the end of the year, nor was it property held for sale to their customers in the ordinary course of their trade or business. On the contrary, the Haisa II barley seed was held by plaintiffs as a capital asset as defined in Section 1221 of the Internal Revenue Code, and gains on the sales thereof during the calendar year 1958 should be treated as long-term capital gains.

3. Plaintiffs are entitled to refund of overpayment of 1958 Federal income taxes in the amount of $12,888.08, together with interest on $8,459.97 at six per cent (6%) per annum from August 9, 1961, with interest on $2002.15 at six per cent (6%) per annum from September 1, 1961, and with interest on $2,425.-96 at six per cent (6%) per annum from September 25, 1961, until paid.